The Federal Deposit Insurance Corporation is a non-appropriated fund instrumentality under the Supreme Court's test in Hopkins and under this Court's current test, which was articulated most recently in the Ains decision. In Hopkins the Court discussed it and in particular discussed the 1970 amendments to the Tucker Act in which Congress recognized the NAFI doctrine and also considered whether to waive sovereign immunity only for 5 specified NAFIs and not for, in that case, the Army and Air Force exchanges. But the Supreme Court also recognized in Hopkins, quoting this Court's predecessor, that Congress's decision could lead to harsh consequences in some cases, but that that was a decision for Congress, not the courts, to make. It's interesting to look at that legislation because Congress considered whether to enact a much broader waiver than only for the 5 enumerated NAFIs, but even when Congress was considering the very broad waiver, which it ultimately rejected, it did not include NAFIs for which Congress had provided sue-and-be-sued authority. So even when Congress was considering the very broad waiver for NAFIs, which it ultimately rejected, the Federal Deposit Insurance Corporation, which can sue-and-be-sued in its own name in district courts, would not have been included, and Congress explained why it wasn't even proposing that or considering that. It was because it had already provided a forum in which those NAFIs could be sued, and that's exactly the case here, and that's why there aren't harsh consequences here. The FDIC can and could be sued in the district court, but Congress has not provided a waiver in the Court of Federal Claims for suits against the FDIC. Are you suggesting that in any situation in which the agency has the right to sue or be sued in its own name, that the United States is not independently subject to suit in the Court of Federal Claims? If the agency is a NAFI that doesn't receive appropriated funds and it has a sue-and-be-sued clause, then it can't be sued in the Court of Federal Claims. So the government's position is that these entities can be sued for damages for breaching contract in courts outside of the Tucker Act? The FDIC and any other entity which has a sue-and-be-sued clause, and that's consistent with this Court's decision in Far West. And the consequences of that, therefore the difference, though, is the pot of money which is accessible for damages. Well, there's two differences. One is, of course, sovereign immunity, that Congress has only waived sovereign immunity in the Court of Federal Claims for certain activities involving the government, and particularly, except for the five exceptions, for appropriated activities. And that allows Congress to monitor and manage the extent to which the Treasury is exposed to claims, because only if Congress has appropriated funds to an activity and said, we want you to do this with the taxpayer dollars, that exposes the government, the Treasury, to claims later on, based upon those activities. I thought you just told me that the government's position now is that suits for a breach of contract and damages for breach can be awarded outside of the Tucker Act by the regional circuits. If an agency has a sue-and-be-sued clause, then under this Court's decision in Far West, if it's an appropriated activity— I'm asking what the government's position is, because, as you know, and as was cited, there are a number of cases which have held that the regional circuits cannot award damages for breach of contract. There are some cases— Some government agency. So I'm trying to understand if the government has changed its position in those cases. No, in some of those cases, the FDIC was sued, as in Far West, the FDIC was sued in its capacity as manager of the Fiscal Resolution Fund. That is an appropriated activity, and for that reason, the United States never objected to the jurisdiction or moved to dismiss or claimed that the Fiscal Resolution Fund was a nanny in any of the Winstar cases. This is not a Winstar case. It is a bank insurance case. That fund, which is the main fund operated by the FDIC, had only received appropriated funds once, 70 years ago, when Congress, by statute, required the FDIC to repay those funds with interest. So for 70 years, it hasn't received a dime of appropriated funds. It also, in 1991, Congress actually overruled the Office of Legal Counsel, which issued an opinion saying that, although the FDIC was a naffy, it still had to apportion its funds to make sure that it would manage its budget on an annual basis and not run out of money by the end of the year, and in 1991, Congress reversed the Office of Legal Counsel and said, no, the FDIC doesn't have to apportion its funds. It's completely independent of the federal budgeting process. What happens when there's extra money from the FDIC till the end of the year? Does Congress take it? No. No. They don't? They leave it there? It doesn't get sort of sucked into the general fund? No, not at all. In fact, the FDIC doesn't even keep its funds in the Treasury in a separate account, which some non-appropriated fund activities, for example, the Mint keeps its money in the Treasury in a separate account. The FDIC actually keeps its money in banks. It doesn't even put its money into the Treasury. What would be the consequence if there were a district court judgment under the sue and be sued clause for exactly this kind of breach of contract claim, and the judgment came to $300 million, is that, would that money, would the FDIC be good for that, either out of their funds on hand or by either borrowing or assessing banks? Would it have an obligation to come up with the money by one of its various means available to it? If it had a judgment against it, it would have an obligation to pay the judgment. If it didn't have the funds on hand, it could borrow commercially. Right. But it would have an obligation to obtain the funds, correct? Well, like any corporation, it would have an obligation to pay the judgment. It would not, the judgment would not be paid out of the judgment fund. It would be paid out of the deposit insurance fund, which is the funded issue here, which is one of the ironies of this case, if the court were to conclude that this is a case within the jurisdiction of the Court of Federal Claims, ultimately the judgment would be paid by the deposit insurance fund, not by the judgment fund. How would that happen? If, in fact, the judgment would be issued by the Court of Claims, wouldn't the judgment then be payable from the judgment fund? No. The judgment fund is a default. If Congress has specified a particular fund for the payment of judgments, the judgments are paid out of that fund and not the judgments fund. So for example, in the Winstar cases, the judgments were paid out of the FISLIC resolution fund. That was a special fund that was set up by Congress to pay for the FISLIC and the Winstar cases. Exactly. And that is the fund that the plaintiffs cite when they say that the FDIC has received all this appropriated money. Actually, that was money put into a special agency that Congress created and that is the FISLIC. I'm not sure I understand. I'm not entirely clear. If there is a judgment for $500 billion and it comes in the district court and the FDIC does not have that money, at least on hand, in the absence of borrowing it or giving new assessments, is then the general fund of the fallback for the remainder? No. It's not available in that situation. But as a court of claims, if there was a judgment in this case, if we decided there was jurisdiction here and there was an award of $500 billion, first you go to the FDIC funds, but assuming that there are no funds, not sufficient funds, then the fallback would be the general treasury. I don't think so because the judgment fund is only available where there has been a general appropriation and there has been no under 2517, 28 U.S.C. Section 2517. Judgments can only be paid when there has been a general appropriation. But even if that were true, you'd have the anomaly that an entity that Congress has clearly instructed not to receive appropriated funds and hasn't received appropriated funds for 70 years, suddenly would have the taxpayers paying its judgments, even though the taxpayers don't pay for all of its activities. But the FDIC hasn't been insolvent until this year. And so you're saying just as when the FSLIC became insolvent, a new system was established through the resolution fund and then turning it over to the FDIC for the thrifts as well as the savings banks. But the FDIC hasn't been insolvent, so there's been no need for an appropriation. And I'm trying to understand this distinction that you're drawing when there was this difference in the call upon the resources for the thrift institutions. And now, although the origins in this case for the meritorious predecessor was a thrift institution, but that distinction is no longer being drawn because everything is under the jurisdiction of the FDIC. And I thought I heard you, in response to Judge Post, say that nevertheless the full faith and credit of the United States no longer applies if the FDIC doesn't have the resources to pay its judgments. No. No. I said the judgment fund would not apply. The full faith and credit... The judgment fund was established in order to pay judgments of the Court of Federal Claims. That's correct, but you don't work backwards to say because there's a statute that would provide a source of payment for cases that are within the court's jurisdiction. Therefore, every case is within the court's general jurisdiction because there is a source of funds to pay judgments for cases that are within the court's jurisdiction. This is not what you're saying... This is very constructive. Could I... This is not what you're saying with the NAFI statute, that if there's not a specific appropriation, it's not within the court's jurisdiction. If it's not within the court's jurisdiction, it can't pay its judgments with appropriated funds. Right, but I'm looking at the front end. Yes, the United States is not liable. I'm looking at the activity, not just the end where there's a judgment, but the activity itself. Is this an activity that Congress has intended to fund? Here, there's no authorization for appropriations to the extent that Congress has even authorized borrowing power. That's right. And I can ask about... But the action here is against the United States, not against the FDIC and the Court of Claims. But... So if it's pursued against the United States, wouldn't the judgment fund be subject to the judgment? Instead of the FDIC, would the U.S. then sue the FDIC for the balance out of the judgment fund? The plaintiffs might have to go to Congress in that case, but the FDIC so far has always paid its judgments, and no one has suggested in this case that it would not pay its judgment. But not at suit in the Court of Claims? Well, one of two things would happen if this case went back to the Court of Federal Claims. One of two things would happen. Either the court would be entertaining an action that involves a non-appropriated fund activity, and the judgment would be paid out of non-appropriated funds. So why is the Court of Federal Claims involved when Congress has said people should go to a district court? Or alternatively, what would happen is the taxpayers would pay a judgment for an activity that Congress clearly intended not to have appropriated funds used for at all. So both results are not appropriate. I would like to talk about the full faith and credit clause, because I think it's very important. Let me ask you, just to step back for a moment so that we can understand the implications of this case. How many federal agencies have the authority to sue and be sued, and how many of those in your view fall into the not be category? What are the consequences of what's before us? I really don't know the answer to that, and I did try to find out in preparation for this argument. There are quite a few agencies that have sue and be sued clauses. The Bureau of Customs and Border Patrol is one of them. I do know that there are countless nappies. Everyone who has looked at the question and tried to count nappies— What are the criteria for determining whether an agency should sue or be sued independently or separately? Generally, but not exclusively, but generally agencies with sue and be sued clauses, like the FDIC, are commercially oriented. And the FDIC is an insurance company. It assesses premiums on its members, and it uses those premiums to pay damages for members who have problems. It is instructive on the FSLC that FSLC also had a full faith and credit backup in a 1982 resolution by Congress. But what Congress did—and this is very important—that when there was a problem, Congress did step up to the plate, but it didn't give any appropriated funds to FSLC. So the assumption that because there's a full faith and credit clause backing deposits—not the FDIC as an institution, but just the depositors' deposits in banks—that if Congress fulfills its pledge, that what that will mean is appropriating funds to the FDIC is belied by history. What Congress did in the FSLC instance was abolish the agency, create a new agency, and give that agency enough funds to pay the depositors. But the full faith and credit clause is only a protection to the deposits of the depositors, not to the insured banks and definitely not to the FDIC. We referred to the following a few times. The provision, the one I identified in the statute, 1824A, is that the borrowing authority? And if so, is that the only borrowing—the only provision dealing with borrowing authority? And if so, is this broadly applicable to all of the functions of the FDIC, or is this merely applicable to just the deposit funds or some other— This is just to the—I mean, there is a separate statutory backup for the FIRF, which is a property that was inherited 20 years ago and is going away very soon. Well, with respect to—let me ask the question the other way, Vivian. Okay. With respect to the BIF, is there a statutory borrowing authority by the FDIC? Yes. And what provision of the statute is that? Is that the 1824A or is that another— I believe it's 1824A. And that applies to the BIF as well as to the deposit insurance company, insurance deposits? It only—it is authority for the BIF to borrow from the Treasury, which it has never done. And if it does, it requires approval by the Secretary of Treasury and repayment at— But it's not—is 1824A limited to BIF or is it applicable to other assets? No, it's limited to the bank insurance funds. There is a separate backup for the FIRF resolution fund. If there was no sue and be sued claud in this case, would you then agree that jurisdiction would lie in the court of federal claim? No. Then this case would be like Ains or Farage. It would be a NAFI. It would involve a NAFI for which there has been no waiver of sovereign immunity anywhere. But this is not that harsh case. And in Ains, this court said, well, the obligations of the Mint are not subject to judicial review because Congress has not provided for it. So in your view, the sue or be sued claud is irrelevant to the statutory interpretation of 1491. You're just using that as a basis to make us feel better because then there isn't, in fact, no place the suit can be brought, right? That's—you're divorcing from statutory interpretation. I always want you to feel better. But I am using it to illustrate that there are no harsh consequences in this case. But it's also relevant to the 1970 amendments because Congress expressly considered the situation of non-appropriated fund activities with sue and be sued clause. And that's exactly this agency. But the agency could have been sued in district court by Slattery. Yes, absolutely. But they're pursuing it on that basis in federal district court. Absolutely. Because the waiver of sovereign immunity under the sue and be sued provision is there. And then any judgment which they would have obtained, if any, would have been gone against the FDIC's funds. That's correct. And not the judgment funds of the U.S. government. That's correct. And if it also makes you feel better, the United States is on record, and I will read it now, that we would not oppose a transfer of this case to the district court as long as the plaintiffs recaptioned the case to be against the FDIC, which is the case they should have brought. The fact that the statute provides not only a sue or be sued clause but also allows the FDIC to enter into contracts, is your argument that the contract here is not with the United States but with the FDIC? That's correct. Because it's a non-appropriated fund activity. Well, I guess what I'm asking is somewhat similar to what Judge Moore was asking, and that is, what consequences should we draw from the fact that the FDIC has an independent contracting authority in the statute? Does that mean that the contracts it executes are contracts with the FDIC rather than contracts with the United States? Yes, because the FDIC is not supported with appropriated funds and is not authorized to bind the United States in contract. It is only authorized to bind itself in contract. But in the Windstar, and in all of the cases that reach us, whether they come directly from the Boards of Contract Appeals or the Court of Federal Claims, the contract is with the agency. Are you, in answer to Judge Dyke's question, saying that those cases are not under the Tucker Act because they're not with the United States? No, if they are contracts made with funds that Congress has appropriated, then of course they are within the jurisdiction of the Court of Federal Claims. But the Supreme Court recognized in Hopkins and Congress recognized in the 1970 amendments, and it's consistent with the history of the Court, that the Court was created to divert the mountains of requests to Congress for private bills to come out of the Treasury by U.S. citizens. Congress was drowning in these requests for appropriated funds from individual citizens and said, let's create a forum that can consider these requests and hear from the other side. The government will have a solicitor who will come in so the decision-maker can hear from both sides. But those were all claims for appropriated funds because that's all Congress had. That was in the 1800s with the Court of Claims. That's correct. There was a forum for congressional referrals. But nothing has changed since then. But the Judgment Fund has changed. Excuse me? But the Judgment Fund has changed. With the inception of the Judgment Fund, it's very clear in the legislative history that the idea was that a judgment under the Tucker Act that you did not have to seek as an additional step an explicit appropriation to pay the judgment. But there are two statutes that are relevant to that inquiry. One is the Judgment Fund statute and the other is 28 U.S.C. Section 2517A, a predecessor of which was enacted at the same time as the Tucker Act. And that refers specifically to matters for which there are general appropriations, making it clear that Congress only intended matters for which it has appropriated funds to go to this court. And under that view, that because there's a Judgment Fund, which is a matter of last resort to pay judgments, for which the court has jurisdiction, under that view the court would have jurisdiction over all MAFI claims or even any kind of claim because there's a Judgment Fund that could pay the judgment. The Tucker Act is a broad statement that you can sue our sovereign for breach of contract. And here there's no question. You're not saying that the banking agencies are not acting with the authorization or as agencies of the nation. But they're not appropriated agencies and, of course, any waiver of sovereign immunity must be expressed. I'm sorry. Go ahead. No, I'm sorry. Well, the FDIC, I take it, is subject to the Federal Tort Claims Act, correct? And judgments against the agency agents would be payable by the United States. So the United States would be the defendant in such an action, correct? I'm not sure whether the United States would be the defendant. Isn't that always the case in FDCA cases? I think it's – well, you're the expert. I don't know, Your Honor. And I think that there is authority in the regional circuits that the FTCA by its terms applies to the FDIC in its corporate capacity. I don't think so in its receivership capacity because the Supreme Court has held that when the FDIC acts as the receiver, it really is the institution. It's not the United States at all. But you have to look at each statute, and that's why this court in – Are all those cases wrong? I mean, let's say that they can be sued under the tort – that the United States can be sued under the Tort Claims Act for the actions of the FDIC. You would have to look at the express statutory language, and that's why there are decisions of this court. Let express statutory. We're talking about Tort Claims Act. Right. I think what Judge Bryson is asking is what's the difference between the United States being liable for FDIC actions under the Tort Claims Act and what's the difference between their being liable for contracts? Is there a difference between a tort and a contract in terms of the United States' liability for the actions of the FDIC? These are completely different statutes, and you have to look at the different statutory language, and that's why this court has on a few occasions held – I don't understand. What's the statutory – Because the Federal Tort Claims Act and the Tucker Act are separate statutes, and they have separate origins. Well, what's the difference in the language? Excuse me? What's the difference in the language? I haven't looked at the Federal Tort Claims Act. I mean, it wasn't raised in the briefs. I'd be happy to look at it and get back to you. I imagine it's broader just the way this court held that the FLSA is because of the special statutory language in the FLSA that the United States could be sued under the FLSA for actions by NAAFIs. But just looking at the special – excuse me – statutory language of that statute in that case. So you would have to look at the language of the Federal Tort Claims Act, and some courts have done that and have concluded that it applies to the FDIC. Counsel, your contract interpretation – or your statutory interpretation hinges on the words contract with the United States, right? You think when 1491A1 says contract with the U.S., that means contract with the U.S., and that should be interpreted as not including NAAFIs. Yes. Then what would be the necessity for adding the entire latter section of that statute for purposes of this paragraph, express or implied contract with the Army, the post exchanges, and NASA? Why, if I were to interpret the first sentence as excluding NAAFIs, there's no reason to add the second sentence? Those are specific waivers that Congress agreed to in 1970. No, no, no. Each of those military posts are NAAFIs, right? They're NAAFIs in Congress? Yes. So if the first sentence says contract with the U.S. and that is interpreted as not including NAAFIs, the second sentence is then entirely superfluous. If it's construed to include NAAFIs, then the second sentence is superfluous. If the first sentence, I mean, if contract with the U.S. includes NAAFIs, then enumerating certain NAAFIs becomes superfluous. And isn't that what happened? I'm confused. No, because the first sentence does not mean that contracts with non-appropriated fund activities are within the jurisdiction of the Tupper Act. And that's what the Supreme Court had done. Well, you're saying the first sentence excluded NAAFIs and the second sentence brought back a few of them. Five specific ones. The legislative history is very clear on that in 1970, and this Court's decision in McDonald's explained all of that legislative history. I got it. Ms. Davidson, do you want to save some of your rebuttal time? Yes, I do. Thank you. Mr. Buchanan? Yes. May it please the Court. Government counsel stated quite clearly that what is required for the FDIC to be sued in the Court of Federal Claims is express waiver of Sovereign Union. And the Tucker Act does precisely that. In fact, the Supreme Court, three different cases or four different cases, Monsanto v. Ruckelshaus is one case, and the Mitchell case, and the Williams case, and the Persault case. And they all talked about the Tucker Act and waiver of Sovereign Union. They said quite clearly, particularly in the Mitchell case, that the Tucker Act is the broadest and widest and most unethical waiver of Sovereign Union. For the United States, though? Yes. Is the FDIC acting on behalf of the United States at this point? It's acting as its own independent agency and contracting with the banks. I think. Does that make the United States liable for appropriated funds in the judgment fund if we sue the United States and not the FDIC? I think under the Supreme Court precedent, the analysis is, is the agency or department that's being sued working on behalf or an agent of the United States? That's the first question. The second question is, are they suing for a constitutional taking, a breach of contract, a regulatory violation, or statutory violation? That's what the Supreme Court case analysis is, and that's what they found in those cases to be the pertinent questions. So the issue is here, is the FDIC an agency of the United States? Are they acting on behalf of the United States? That's never been disputed in this case. The difficulty I'm having is if you read the first sentence, so your view of the Tucker Act provision A-1 without the exception provision is that all nappies are included in that first sentence. And if that's your view, which I understand you to have said, then I'm having a hard time understanding why the whole amendment, the 1970 amendment, is absolutely superfluous language. Well, I would go back again what the Supreme Court has stated on the issue, but in terms of the 1970 amendments, all that Congress did there was to allow for certain military exchanges and the Nassau exchange. But under your view of the first sentence, it clearly and unambiguously would have covered everyone in any way. So what would the need have been to have the second exception? My view is that if those agencies are acting on behalf of the United States, that they would be covered under the Tucker Act and therefore you wouldn't need that amendment. You don't need it. However, why that amendment occurred is because the Court of Claims was denying military personnel the right to sue for back wages and pay and other types of causes of action and they had nowhere to go. They were being thrown out of the Court of Claims because they were saying they're not appropriated agencies. They had nowhere else to go. Obviously, there was various dissents that were written in the Court of Claims and there was a public outcry. So what you're saying, I take it, comes down to this, if I understand your argument. It is that the Tucker Act, without the 1970 amendment, covered everything that is now covered and the Court of Claims didn't get it with respect to these post exchanges and therefore Congress fixed that, correct? Is that essentially what you're saying? It wasn't necessary except for the fact that the Court of Claims had, according to Congress, misread the swoop of the Tucker Act. So if that's the reason, what about NASA? Well, there was just four cases at that time in the Court of Claims and three of them involved military exchanges. But one of them involved something that wasn't a military exchange. So to the extent that Congress was aware of what was going on out there in the Court of Claims and apparently they were responding to that, they left out the grape-crushing association or whatever it is. The Grape Administrative Committee. Does that not suggest that there was an intention to write more narrowly than covering all of the NAFIs that were out there? I think the basic canon of the statutory construction that we control is if Congress in any way endorsed the NAFI doctrine is then stated. And the Supreme Board is clear on this when we cited the case that if Congress doesn't take any action to endorse in this case certain judicial decisions such as that in order to have appropriated funds then it has no meaning. This Court should not rely on the fact that the 1970 amendments merely added certain not appropriated or NAFIs to the jurisdiction of the Court of Other Claims. They did not speak to the other issues. There was just one other case out there as you said. So this was I believe the focus here, the concern here was with these military personnel. What you're saying is it's open to us to say that the 1970 amendment was totally unnecessary and that the distinction that they drew is irrelevant to the issues before us, right? The Court does not need to say that the 1970 amendments were unnecessary or not. The Court what I'm saying and I think what the Supreme Court is saying on statutory construction is the mere fact that Congress did not took no action to endorse prior to the great finding that the Great Committee, the Great Administrative Committee was not a NAFI. By not doing that, they were not endorsing that policy. That was the last known case. It seems to be a little bit inconsistent with the Supreme Court's decision in Bilski where they found that action by Congress to protect some business method patents was a suggestion that not all business method patents were outside the statute. Well if in fact Congress were to pass a law that's analogous or accommodates a certain judicial decision such as Brown and Williamson decisions in that case you had a situation where Congress consciously passed laws regulating cigarettes and the FDA had never decided to attempt to regulate cigarettes even though there were decisions that related to that issue and what it came down to is the Supreme Court said the mere fact that Congress has passed laws in which it's kept to itself the preemption issue that therefore that the FDA interpreted that to be Congress to state that the FDA did not have the right to regulate cigarettes and there are several other cases that are similar to that but the general rule is that with regard to these amendments is you have to have a situation where a court basically adopts the judicial decision in question so this would be you would have to adopt the doctrine in question. It never spoke to the doctrine. All it did was add these military exchanges to jurisdiction for the Tucker Act but if you get back to what the Supreme Court has said I think that's the starting point and if you get to this court and lion raises Why doesn't the action of Congress in bringing some NAFIs within the Tucker Act suggest that with respect to other NAFIs they're not within the Tucker Act Well I believe that the court by just adding those and I think this is an issue of statutory construction by adding those it did not endorse the judicial doctrine and remember there's just one other case out there we're just talking about a single other case at that time you had the cases on military exchange you had the Pulaski Cab Company and you had cases involving the employees of military exchanges Let's just say history shows that Congress was well aware that there were other NAFIs besides the five categories that were involved in the Tucker Act Well you had the Senate report that wanted to get rid of it altogether and the House report says that recognized that there are other NAFIs right? That's correct and the NAFIs they were talking about and their concern was that they were actually sporting clubs There are NAFIs that aren't covered by the Tucker Act even today the chess club of Fort Myer for example as long as it isn't funded and run by Fort Myer is presumably independent of the United States you couldn't sue the chess club for a contract breach or anything like that and that's exactly what the House was concerned about is that somehow the United States they did talk I believe about sporting clubs, soccer and the idea was that people could form clubs on the auspices of the military and you know somehow draw a contract and get sued there but I think again if you go back to what the Supreme Court is saying Well let me ask you about the language the language itself you referred to the military exchanges but one of the particular exceptions in the statute is for the exchange councils of NASA Do you know where that comes from? Was there any litigation involving NASA as a NAFI? So I understand the military exchanges there had been some history with respect to those but they also singled out the exchange councils of NASA Is there any basis do you think in the legislative proceeding to distinguish that from FDIC or anything else? I do not see anything there and again in military exchanges there were three of the four NAFI cases were about military exchanges and so that drove Well is it that further indication that there was no intent to exclude other unenumerated NAFI's such as FDIC? Again I don't believe that the fact that clearly they could have abolished the doctrine they did but I don't think the fact that they did not act on the judicial doctrine at the time again going back to standard standards of statutory construction means that they endorsed the law and that's the standard rule but going back the Supreme Court has stated for example that the fact that an entity the Congress has stated that a particular entity is not to receive appropriated funds or are they concerned about the entity spending funds or buying the government or saving the fisc and these are the reorganization rail cases the Monsanto case they said notwithstanding that that doesn't matter we do not look to these additional regulations and amendments and statutes we look straight to the Tufter Act and we assume if this entity is acting on behalf of the United States and they bring in a case consistent with the Tufter Act like a contract case then they can sue in the Court of Federal Claims and in Alliance Raisins this court found that for takings cases you can bring a case a NAFI can sue in the Court of Federal Claims so they carved out another huge exception but in Mitchell page 236 the Supreme Court said there is no distinction between a contract claim or a takings claim under the Tufter Act so if you read Alliance Raisins and the Supreme Court cases together then if you can sue for a takings claim under the Tufter Act in the Court of Federal Claims sue a NAFI then why can't you sue for breach of contract let me ask you a question before your time runs out the sue and be sued provisions which are in the FDIC originating statute why was this action brought that's a waiver of sovereign immunity is it not? Yes it is so why wasn't the action brought in Federal District Court by Slattery because the FDIC had already successfully argued in one attempt on this very issue in FARA U.S. v. FARA they had argued and they argued later in 94 and 97 and also the district group case in 92 that you could not sue the FDIC in Federal District Court so we filed the case but we held in FARA also that Far West that the FDIC could be sued in Federal District Court concurrent jurisdiction yes but if it was an issue as to appropriated funds at that point why wasn't the action then just transferred to the Federal District Court because was there a problem with transferring it without the aspect because the sue and be sued according to the Supreme Court grants jurisdiction to the Federal District Court that's correct and the Supreme Court has said where there's concurrent jurisdiction there's concurrent jurisdiction you can sue in either court but on FARA West that was again the FDIC taking the position that the place to sue the FDIC is the Board of Federal Claims and when I filed this case in May of 1993 the law then the 10th Circuit in a position taken by the FDIC was that I could not sue in Federal District Court and they took that position repeatedly there after successfully there's four different cases and in oral argument to the panel below the government said in response to questions about that that was then this is now so this notion is that's where we should have gone what would have happened then is obvious they would have filed a motion what was their theory as to why you couldn't sue in District Court on a contract excuse me Your Honor what was their theory as to why you couldn't sue the FDIC in District Court for breach of contract their theory was that the Tucker Act required you to sue the FDIC for breach of contract in the Board of Federal Claims and auction company in the D.C. circuit they never if they thought if they believed in this position they wouldn't have taken that position with all these other circuits if this court were to rule we have a split in the circuits the case would go to the Supreme Court but they never took that position they didn't take it until 10 years after this case was filed they filed multiple other motions this case was filed in 93 they had motions filed in 94 other motions to dismiss they never took this until after they had trial liability and much after that although they claimed that it was the Furash case that caused them to ultimately file  on the basis that the FDIC was unhappy that was a year ahead of when they filed does the government's current position that contracts with the United States does not include NAPI, that NAPIs are not contracting on behalf of the U.S. because of the non-appropriated funds mean that there's no necessity for any sue and be sued clauses because if each NAPI, every single one of them is not contracting for the U.S. contracting only for itself as an independent institution then can't all of them be sued in the district court all the time and there's no need for any sue or be sued clauses well I think the sue or be sued clause also allows them to seek certain relief so the FDIC if you were to sue them for certain causes of action other than those stated in the Tucker Act you'd have to go to the federal district but the sue and be sued clause also waives sovereign immunity that's the reason why you need the sue and be sued clause that's correct well but if they're not acting as an arm of the government but rather as Ms. Davidson refers to them like a corporation as an independent institution do we even need a waiver of sovereign immunity any longer well for the court of claims you need no but in the district court she says they're not to fall within the court of claims jurisdiction because this is not a contract with the government and her focus is on the United States they're not contracting for the United States they're contracting as an independent agency well if they're not part of the U.S. then shouldn't that mean they can be sued in any district court if they're not a sovereign if they're not the United States they're not a sovereign then they do not have sovereign immunity and therefore you can sue in federal district court but that's not the position they successfully took I'm betting Ms. Davidson's not going to stand up and agree if they're either a sovereign or if they're not the United States I don't know how you're a sovereign and to get back to the lion's raisin's decision here this court held there that for takings cases you could sue any NAFI in the court of claims no it doesn't say you can sue them it says the United States is responsible for the actions of agencies but in that case the court found it was a NAFI and it said they could be sued yeah it doesn't make any difference for takings liability because the United States is liable for the actions of its agents whether they're NAFIs or not that's true but that would also apply for breach of contract would it not well that's the question and the Supreme Court has said in Mitchell, again page 236 there's actually no distinction between a contract claim and a takings claim in terms of the Tucker Act so this court has said you can sue a NAFI in the fact that it has appropriate funds or not you can sue it in the court of claims and the Constitution does not waive sovereign immunity for takings claims in the court of claims the Tucker Act does that that's why it specifically states constitutional takings claims there in if you didn't have that provision in there you could not sue a NAFI or any government agency that had appropriate funds in the court of claims so and just I would add that back to the standard of aims the notion that the FDIC does not receive appropriate funds the question again by the Supreme Court is first of all there's an unequivocal broad based waiver so the first question is not for the plaintiff to prove it that there's some waiver to point to some other regulation or statute you look strictly at the Tucker Act and then you prove whether it's the United States making sure they're acting on behalf of the United States or not and that's what this court found and Lyons raisins with ironically the race administrative committee just a quick factual question you say at page 56 of your brief that if you had brought this case in the district court the FDIC would have been subjected to even larger damages what would be the basis for the larger damages well if they're not the sovereign they're not the United States you can get interest to get this interest I thought now in terms of the issue if we go back and focus on the issue of whether they're an AFI or not whether they have funds currently there are 500 billion dollars appropriated for the FDIC to borrow and the FDIC chairman has testified in a written letter saying we need this money they increased it from 30 billion to 100 billion to 500 billion those are appropriated funds under article 1 section 9 of the constitution treasury funds from congress to the FDIC as of December 31 the FDIC had 20.1 20.9 billion dollars in the bed so the premiums that were coming from the banks who they're constantly seizing disappearing that's dried up so I do not know the exact source of money now but I fully believe and anticipate that they're drawing down on these funds that come through one of these mortgage and housing statutes that's where the line of funds are coming from they're drawing down so they're actually using or will be using treasury funds appropriate funds even if they have to pay them back is that in the record? no in the record below no because we couldn't put that in there because that was not an issue whether the fact that money was not there yet but certainly in the briefs below we argued about the borrowing and I would add that you don't know the terms and conditions of the loans oh I would fully expect that those loans they have to pay them back but how do you pay back I mean with this banking crisis 100, 200, 300 the question is whether or not those were loans if they're loans they have to be paid back yeah there are loans but in this federal circuit general electric in the court below and used aircraft and Brightbeck involving the St. Louis Seaway and also the National State Bank of Newark this court said whether you're talking about borrowings or you're talking about the full face of credit and in Brightbeck it was the St. Louis Seaway and they did not have appropriate funds but they could borrow that was enough to find that it was not enough in the National State Bank of Newark there it was FHA debentures they were backed up by the full face of credit the treasurer there were not funds there appropriated it was a backup like this the full face of credit and they found that it was not enough so we have initially with the F we have 100 billion dollars 100 million dollars that was put into the FDIC when it started with no obligation to pay it back even though it was paid back some 14 years later you have a 500 billion dollar line of credit and you have in every FDIC insured bank the full face of credit of the United States stands behind it and the government says that goes to the deposit insurance fund well first of all the FDIC's sole purpose is to insure deposits of banks all the premiums that it gets to operate all of its functions including insurance functions come hopefully from banks that fund is dried up they now have to use treasury funds in the form of borrowings and you have the full face of credit to back that up now if the fund fails and banks fails the funds all come in together so whether they're bank funds whether they're treasury funds in the form of a loan or they're appropriated funds they come in they pay for all the functions because there's no other source of income and that's what would happen here and the function in this question the function in this case was the acquisition of Western Savings in 1982 by Meritor at the FDIC we had a contract with the FDIC and that went to the exact activity that we're talking about here to cover the deposit insurance fund of the United States we acquired Western which had a 700 million dollar negative net worth in the form of its difference between deposits and mortgages and what the FDIC stated in a press release and they admitted below and the chairman of the FDIC testified was that but for Meritor taking over Western Savings and Loan they would have to liquidate the institution and paid out 700 million dollars from the insurance fund so we became in effect the insurer we took that bank over we took over the deposit liabilities and that according to the FDIC as chairman of the commissions avoided them having to use 700 million dollars in funds from the BIF so that is the activity it's directly related to the full faith and credit guarantee of congress in this case so I have two minutes and I reserved some time for the two minutes is yours to spend Mr. Buchanan we have allotted separate time for Mr. Smith so again I would state that where the court needs to begin is to look at Supreme Court decisions in Peralt and in Mitchell and in Williams and in Monsanto versus Ruckelhausen and all those cases they looked at the agency in question to determine whether it was acting at the behest of the United States and once they determined that and several were takings but the Mitchell case was not a takings case that was a regulatory violation case and they said in all those cases that irrespective of whether there was money that was appropriated or not those entities could be sued in the Court of Federal Claims because of the Tucker Act and how broad the waiver of sovereign immunity was and this court followed Peralt and Mitchell in Lyons Race and where it said and it held that even though the defendant was a NAFI it could be sued in the Court of Federal Claims because it was a takings case. Now the Judgment Act no more provides money for a takings case or any other case according to the government unless the entity has appropriated funds but in that case they held well it's a takings case so therefore they said this in footnote 7 in Lyons Race and they said we assume we assume that any judgment based on a takings would be paid out of the judgment fund and I would add that the FDIC filed an amicus brief in the three judge panel which it said that the judgment in this case would be paid from the judgment fund. It's a separate fund and that's where it would be paid and that's what they stated below so we have the FDIC taking various positions at various times today you've heard the United States who's obviously being paid by the Treasury not the FDIC representing the FDIC telling you that any judgment in this case would have to come from the FDIC where meanwhile it's client says something totally the opposite and then they've taken repeatedly different positions on this very issue and depending on what court they're in. Thank you. Thank you Mr. Brinkman. Mr. Smith you have a brief four minutes. Good morning. May it please the court. I'm Brad Smith from Sullivan and Cromwell Council to Plaintiffs Cross Appellants Stephen Roth and Interstate Properties. I want to focus my argument on the key issue that's been the subject of this morning's conversation and with respect to us it's what is the effect of the NAFI   this is not the case. It's not the case. It's not the case. I said to the court that the NAFI doctrine does not have an effect because even if the FDIC is a NAFI that would not prevent our clients from pursuing their takings claims. As this court recognized in Lion Raisins there is no question that NAFIs are agents of the United States and the United States incurs takings liability for the acts of its agents. Accordingly our clients takings claims based upon the FDIC's conduct are against the United States founded upon the Constitution. What do you do with section 1821 and the limitation on judicial review in that section? That's a fair question, Your Honor. We believe that the panel decision correctly found and correctly agreed with the Tenth Circuit's decision in Homeland Stores. What the analysis is is that 1821d.13d channels claims that could have been brought against the seized institution into a special proceeding. I don't believe, however, that it can channel a takings claim such as the one that we have asserted because the language of the statute clearly doesn't cover those kinds of claims. Well, the second portion of the talks not just against claims that presumably would have been brought against the institution but talks about claims that would be brought against the FDIC pertaining to acts or omissions of the corporation. That sounds like the kind of thing that is the activities of the FDIC in the course of its operating its receivership, right? Your Honor, I think that I agree that it's a pretty broad language. I think that the problem and the issue that the panel wrestled with and that the Tenth Circuit wrestled with is that the language is so broad that I think if it were applied in its broadest sense it would actually prevent us from asserting a claim in any court because I don't believe that the types of claims that are authorized under the statute to be brought before the district court. I don't believe the language describing those kinds of claims actually would apply to the takings claim that we have asserted. So if you reinterpreted the statute in that fashion, we would be left with nowhere to go, which I think is what drove the panel below and the Tenth Circuit to conclude that the statute needed to be brought before the district court.  before the district court, particularly the receivership claims, particularly the type of takings claims that we have asserted, can be brought in any court. The takings is only one of your claims, I take it. You have several claims, and takings is unique in that it's self-executing, so there isn't any problem with sovereign immunity. You're going to be able to bring your claim. Correct, Your Honor, we have asserted it. But the other claims are subject to can be excluded, although in fairness to our complaint, I think the other two claims that we have presented are derivative of the takings claim. They basically allow what we're seeking based on the taking that took place. We're asking the court below to make a declaratory judgment. And just to be clear, the Court of Federal Claims, with respect to your claim, rejected your claim, saying, finding they had no jurisdiction, in contrast to the action with respect to... Correct, Your Honor, the Court of Federal Claims dismissed our claims, finding a lack of jurisdiction. The panel decision reversed that finding, and this Court has now obviously vacated the panel decision. But going back to your question, I think that where the Court of Federal Claims made an error is in deciding that it did not have jurisdiction on the basis that the FDIC is not the United States. But what we learned from Lyon-Raven is that that's not the appropriate question. The question is not, as the Court of Federal Claims framed it, whether the FDIC sometimes can be adverse to the United States. The question is whether the conduct that the FDIC has engaged in was conduct on behalf of the United States, particularly when it engaged in the taking under the Constitution. And we think that under that standard, our client's claim should be allowed to proceed. Thank you, Mr. Smith. Ms. Davidson, you have about five minutes remaining. Thank you. I'd first like to respond to the question from Judge Dyke and Judge Bryson about the FTCA. My colleagues have reminded me that the FTCA expressly applies to sue-and-be- sued agencies, and therefore some regional circuit courts have held that the FDIC is an agency within the FTCA definition of agency. Of course, that's a different statute. That was my point before, but I'd like to respond to that question. I'd also like to go back to where I started with Hopkins, which is the Supreme Court's most fullest explanation of the standard for determining a non-appropriated fund instrumentality. And all the Supreme Court said was, does the activity receive appropriated funds? And we respectfully submit that that should be the test. It's clear, it can apply easily, and most importantly, it provides predictability so that parties can look and see, am I contracting with an entity that receives appropriated funds or not, and it can know at the outset, is the FDIC a contract with the sovereign? The FDIC is part of the government, and in Standard Oil, which was the first time the Supreme Court looked at non-appropriated fund activities, the Supreme Court said they are part of the United States, but the United States does not assume responsibility for their liabilities. So it is literally a contract with the government, with the United States. It is part of the sovereign. It is part of the United States, and a waiver of sovereign immunity is necessary in order to sue the FDIC or any non-appropriated fund instrumentality, and that's why some nominees can't be sued because there's been no waiver. But under the Hopkins standard, a party would know. There wouldn't be any uncertainty, as there is under what became sort of a detour with L'Enfant Plaza, and has now been somewhat realigned with Parash and Ains, and I respectfully submit is where the panel in this case was led astray, and that is this fourth prong of the Ains test, which is really a recognition of the L'Enfant Plaza decision, and that prong, the fourth prong, which is the only one that really doesn't go to, or their current appropriations. It says there must be a clear expression by Congress that this entity will not receive appropriated funds, but Congress, first of all, can't bind a future Congress, so a Congress could not pass a law, even if it were in the business of passing laws stating what its future intentions were, it couldn't pass a law saying no Congress will ever appropriate funds for this activity, and we have seen some non-appropriated fund activities that Congress has decided over time to provide appropriated funds for. So Congress has to have that flexibility, and to create as a requirement that Congress must clearly express that this activity will not receive appropriated funds imposes an impossible burden on Congress, and goes way beyond what the Supreme Court said the test was, which is does this entity receive appropriated funds? With Lion Raisins, the rule for taking is was it the United States or an agent of the United States, and the law is that even a private party could be an agent of the United States for purposes of a taking. So the court in Lion Raisins held that a NAFI could be an agent of the United States for purposes of the takings law, but that doesn't mean that the Court of Federal Claims has jurisdiction for contract actions. A lot of the cases that were cited about the early 90s, it may take a while to go through all of them, but some of them involved the FERF and the FDIC in resolving the thrift crisis, and those were appropriated fund activities, and those cases really got sorted out after this Court's decision in Far West, which explains that if the FDIC is using appropriated funds, then it could be sued in the District Court under its soon-to-be-sued authority, or the United States could be sued in the Court of Federal Claims. But that's not this case. So some of those do involve appropriated funds, but it's an entirely separate part of the FDIC, and it's required to be kept separate from the bank insurance funds. Also, the borrowing authority, the same exact statute existed in Farash involving the Federal Housing Financing Board, and this Court held that that was a NAFI, even though that entity had borrowing authority, and that the statutory language is identical for that entity and the FDIC. None of those claims, also, by the way, going back to the early 90s, when there was some confusion, but none of those decisions discussed the NAFI doctrine at all. So I think it's unfair, and certainly Mitchell didn't discuss it, so it's unfair to say that in those cases, whatever they were talking about, whatever statutory scheme, and whatever confusion may have existed, they weren't even talking about the NAFI doctrine. The... Do you have a final thought for us, Ms. Davidson? Thank you for your time, Your Honor. Thank you to the Council for their assistance today. All rise.